AARON M. KINIKINI (Bar No. 10225)
LAURA K. BOSWELL (Bar No. 12449)
Disability Law Center
205 North 400 West
Salt Lake City, Utah   84103
Phone:  (801) 363-1347
Fax:  (801) 363-1437

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRENT LEVORSEN,<br><br>Plaintiff,<br><br>v.<br><br>OCTAPHARMA PLASMA, INC.,<br><br>Defendant. | **COMPLAINT**<br><br>Case No. _____ |

Plaintiff, BRENT LEVORSEN ("Mr. Levorsen"), as a complaint and cause of action against Defendant, OCTAPHARMA PLASMA, INC. ("Octapharma"), by and through counsel, states and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action for declaratory judgment and permanent injunctive relief to redress and prevent violation of plaintiff's rights pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*  Plaintiff seeks injunctive relief requiring defendant to correct its violations of Plaintiff's rights, prohibiting defendant from

continuing its misconduct in violation of the ADA, and from engaging in similar conduct in the future. Plaintiff seeks attorney's fees and court costs pursuant to 42 U.S.C. § 12205.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to hear and decide Plaintiff's ADA claims pursuant to 42 U.S.C. §§ 12188-89, as the Plaintiffs' claims arise under and are based upon violations of Title III of the ADA, 42 U.S.C. §12182, *et seq*.

3. This Court is vested with original jurisdiction of these claims pursuant to 28 U.S.C. §1331 and §2201.

4. Venue for this action is proper in the United States District Court for the District of Utah, Central Division pursuant to 28 U.S.C. §§ 125 and 1391(b) and (c) and because the claims arose in said division and district and, further, because Defendant conducts business in such district. The subject public accommodations immediately at issue are located in Salt Lake County, Utah.

## PARTIES

5. Plaintiff BRENT LEVORSEN ("Mr. Levorsen") is and was at all times alleged herein a citizen and resident of the State of Utah.

6. Defendant OCTAPHARMA PLASMA, INC. ("Octapharma") is a Delaware corporation, conducting and transacting business in the State of Utah.

## OPERATIVE FACTS

7. Mr. Levorsen was and is a resident of Salt Lake City, Utah.

8. Mr. Levorsen is an individual with psychiatric disabilities, including borderline schizophrenia, post traumatic stress disorder, Attention Deficit Hyperactivity Disorder (ADHD), and insomnia. Mr. Levorsen's disabilities substantially limit him in many major life activities. He is an individual with a disability within the meaning of the ADA.

9. Octapharma is a private entity, open to the public, servicing its customers by giving money in exchange for a source plasma donation. It is a public accommodation and a covered entity within the meaning of Title III of the ADA.

10. Octapharma operates plasma donation centers wherein qualified donors are paid for donating source plasma. Source plasma is the fluid portion of human blood collected by plasmapheresis and is used as source material for further manufacturing use. Octapharma owns and operates a plasma donation center at 5414 South 900 East, Salt Lake City, UT 84117 (hereinafter "900 East location").

11. Mr. Levorsen has for several years, supplemented his very limited and fixed income by donating source plasma in return for money.

12. On or about May 6, 2013 Mr. Levorsen attempted to donate source plasma at Octapharma's 900 East location.

13. As part of the donor eligibility determination, Octapharma required Mr. Levorsen to undergo a physical examination. During these examinations, it is standard practice to check for medical issues such as heart defects, kidney stones, as well as to ascertain whether the donor suffers from a list of diseases affecting the blood.

14. Octapharma's Medical Staff Associate, "Cory," conducted Mr. Levorsen's exam. During the course of the survey, Cory asked Mr. Levorsen if he was currently taking any medications. Mr. Levorsen responded that he was taking ambien, amitriptyline, and geodon.

15. Cory asked why Mr. Levorsen had been prescribed geodon. Mr. Levorsen disclosed his borderline schizophrenia.

16. Cory then told Mr. Levorsen he could not donate source plasma because he was afraid Mr. Levorsen would have a schizophrenic episode while donating source plasma. He feared that if Mr. Levorsen had a schizophrenic episode while donating, Mr. Levorsen would pull the needle collecting blood out of his arm and hurt him-self and/or others. This conclusion was not based on Mr. Levorsen's history or behavior, but instead solely on his diagnosed disability, borderline schizophrenia.

17. Based on Cory's conclusion, Mr. Levorsen was placed on the National Donor Deferral Registry ("NDDR"). This "deferral list" is a database containing the names of persons who are considered unfit to donate. Mr. Levorsen's placement on the NDDR has forever barred him from donating source plasma at any donation center in the nation. Octapharma placed Mr. Levorsen on the NDDR solely because he has borderline schizophrenia.

18. As he left the 900 East location on May 6, 2013, Mr. Levorson asked the Octopharma receptionist, "Val," if he could have a "Donor Medical Suitability Information" form (hereinafter "the form") for his treating doctor to sign. This form contains, *inter alia*, spaces for certifications from treating professionals that Mr. Levorsen is medically suitable for plasma donation twice weekly. Val provided Mr. Levorson with the form.

19. On May 21, 2013, Dr. Benjamin Thatcher, Mr. Levorson's primary psychiatrist,

signed the form certifying that Mr. Levorsen is medically suitable to donate plasma twice each week.  On May 20, 2013, Mr. Levorson's other psychiatrist, Dr. Christopher Davis, also signed the form, certifying Mr. Levorsen's fitness to donate plasma twice a week.

20. On or about May 23, 2013, Mr. Levorsen returned the form to Val at the 900 East location.  Val accepted the paperwork, but told Mr. Levorsen that it would simply be discarded and that he would remain on the NDDR because of his borderline schizophrenia.

21. Since that time, Mr. Levorsen has not been able to donate source plasma anywhere.  Consequently, he has been deprived of the $260 /month income his donations previously provided.

22. Mr. Levorsen wishes to donate source plasma at Octapharma's 900 East location now and in the future.  Mr. Levorsen cannot presently donate source plasma due to Octapharma's unlawful actions.  Octapharma's exclusion of Mr. Levorsen is present and ongoing, and Mr. Levorsen is fearful that unless enjoined and restrained, Octapharma will persist in its exclusion to his harm.

## CAUSES OF ACTION

23. Plaintiff, Mr. Levorsen, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference.

24. Mr. Levorsen brings this action under Title III of the ADA, 42 U.S.C. §12182, *et seq*.

25. Private entities affecting commerce such as "pharmac[ies], insurance office[s], professional office[s] of a health care provider, hospital[s], or other service establishment[s]" are places of public accommodation under the ADA. *Id.* at § 12181(7)(F).  Accordingly, defendant

Octapharma is a public accommodation, and an entity covered under the ADA.

26. Title III of the ADA prohibits, *inter alia*, discrimination "on the basis of disability in the full and equal enjoyment of the . . . goods, services, privileges, advantages, or accommodations of any place of public accommodation." *See* 42 U.S.C. § 12182(a) (1990).

27. As described, *supra*, Octapharma placed Mr. Levorsen on the NDDR exclusion list and denied him access to its services solely on the basis of his disability.

28. Under the ADA, Octapharma can only deny an otherwise qualified individual with a disability access to its services, if that individual poses a "significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." 42 U.S.C. § 12182(b)(3) (1990).

29. Moreover, in determining whether an individual is a direct threat, or significant risk to safety, Octapharma "must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: "the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." 28 C.F.R § 36.208(b) (2004).

30. Octapharma did not have any information tending to support its conclusion that Mr. Levorsen was a direct threat or safety risk. Nor did Octapharma complete an objective, individualized assessment weighing the risks of allowing Mr. Levorsen to donate source plasma.

31. Octapharma's conclusion that Mr. Levorsen was an excludable threat was based on mere stereotypes of individuals with mental illness, and not upon any objective evidence or individualized assessment.

32. Because Octapharma refused Mr. Levorsen service and denied his full and equal access to its donor services based solely on his disability, Octapharma has violated Title III of the ADA.

33. Mr. Levorsen, despite his disability, is completely qualified to donate source plasma. Octapharma's denial of donor privileges, solely on the basis of Mr. Levorsen's mental illness, constitutes intentional disability-based discrimination.

34. Defendant Octapharma's conduct, described above, was intentional and taken in disregard of the rights afforded Mr. Levorsen under the ADA.

### Count I

35. Plaintiff, Mr. Levorsen, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

36. Title III of the ADA prohibits private entities providing public accommodations, such as Octapharma, from discriminating against a person with a disability because of his disability by denying him the opportunity to participate in or benefit from the services, privileges, advantages, or accommodations of the entity. 42 U.S.C. § 12182(b)(1)(A)(); 28 C.F.R. § 36.202(a). Mr. Levorsen is a person with disabilities as defined by the ADA.

37. Octapharma's refusal to allow Mr. Levorsen to donate plasma and its placement of Mr. Levorsen on the NDDR exclusion list because he has disabilities, discriminates against him by denying him the opportunity to participate in and benefit from the services, privileges, advantages, and accommodations Octapharma offers, in violation of the ADA and implementing

regulations.

## Count II

38. Plaintiff, Mr. Levorsen, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

39. As a private entity providing public accommodations under Title III of the ADA, Octapharma is prohibited from discriminating against a person with a disability by denying him the opportunity to participate in or benefit from the services, privileges, advantages, or accommodations of Octapharma in a manner that is equal to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

40. Octapharma's refusal to allow Mr. Levorsen to donate plasma despite receipt of Mr. Levorsen's "Donor Medical Suitability Information" form, signed by his treatment professional certifying that Mr. Levorsen was medically suitable for plasma donation, while at the same time allowing other individuals to donate plasma after receiving similar certification of suitability, discriminates against Mr. Levorsen by denying him the opportunity to participate in and benefit from the services, privileges, advantages, and accommodations it offers in a manner equal to other individuals, in violation of Title III of the ADA and implementing regulations.

## Count III

41. Plaintiff, Mr. Levorsen, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as

follows:

42. As a private entity providing public accommodations under Title III of the ADA, Octapharma is prohibited from discriminating against a person with a disability by using standards or criteria or methods of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. § 121829b)(1)(D)(i); 28 C.F.R. § 36.204.

43. Octapharma's refusal to allow Mr. Levorsen to donate plasma and its placement of Mr. Levorsen on the NDDR exclusion list on the basis of criteria and standards premised on stereotypes and prejudice toward persons with psychiatric disabilities, results in discrimination based on his disability, in violation of Title III of the ADA and implementing regulations.

## Count IV

44. Plaintiff, Mr. Levorsen, repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

45. Pursuant to Title III of the ADA, Octapharma is prohibited from imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability from fully and equally enjoying any services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of same. 42 U.S.C. § 12182(b)(2)(A)(i); 28 C.F.R. § 36.301(a).

46. Octapharma's refusal to allow Mr. Levorsen to donate plasma and its application of eligibility criteria that screen him out prevents Mr. Levorsen from fully and equally enjoying any of the services, facilities, privileges, advantages, or accommodations. The eligibility criteria that

Octapharma applied to Mr. Levorsen were not necessary for the provision of the services, facilities, privileges, advantages, or accommodations. Defendant Octapharma's actions result in discrimination based on Mr. Levorsen's disabilities, in violation of Title III of the ADA and implementing regulations.

## DECLARATORY RELIEF

47. This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between Plaintiff and Defendant.

48. Plaintiff, Mr. Levorsen, is entitled to a declaratory judgment concerning each of Octapharma's violations of the ADA and implementing regulations, and specifying Mr. Levorsen's rights with regard to Octapharma's services and facilities.

## INJUNCTIVE RELIEF

49. This action seeks injunctive relief pursuant to 42 U.S.C. § 12188 and Rule 65 of the Federal Rules of Civil Procedure.

50. Plaintiff, Mr. Levorsen, is entitled to a permanent injunction requiring Defendant Octapharma to correct each of its violations of the ADA and implementing regulations as such relate to Mr. Levorsen, and requiring Octapharma to cease its discriminatory exclusion of Mr. Levorsen from its programs and facilities, and requiring Octapharma to allow Mr. Levorsen to participate in its programs on a basis equal to other persons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRENT LEVORSEN requests that the Court:

1. Exercise jurisdiction over this action;

2. Enter a declaratory judgment on behalf of Mr. Levorsen, declaring that Defendant Octapharma's actions are in violation of Title III of the ADA and implementing regulations;

3. Enter a permanent mandatory injunction ordering Octapharma to cease its exclusion of Mr. Levorsen from its plasma donation programs, and requiring Octapharma to remove Mr. Levorsen from the NDDR exclusion list, and ordering Octapharma to cease its exclusion of disabled persons from participation or benefits of services and activities when the exclusion or denial occurs by reason of such disability;

4. Award to Mr. Levorsen all costs and attorney's fees expended herein and assess all such costs against Defendant Octapharma;

5. Grant Mr. Levorsen such other and further relief as may be deemed just, equitable and appropriate by the Court.

RESPECTFULLY SUBMITTED THIS THE 30th DAY OF APRIL, 2014.

DISABILITY LAW CENTER

Attorneys for Plaintiff

By _____
AARON M. KINIKINI
LAURA K. BOSWELL